# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| RICARDO SAUCEDO, | ) |
|     Petitioner, | ) |
| v. | ) NO. 2:05-CV-66 PS |
| ED BUSS, | ) |
|     Respondent. | ) |

## OPINION AND ORDER

*Pro se* Petitioner Ricardo Saucedo, an inmate at the Westville Correctional Facility in Westville, Indiana, was charged administratively with refusing to submit a urine sample and, as a result, was found guilty by the prison's conduct adjustment board (CAB). After exhausting his administrative remedies, Saucedo petitioned this Court for relief under 28 U.S.C. § 2254. The Response filed on behalf of Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In his response, the Attorney General of Indiana submitted the administrative record reflecting what occurred before the CAB.

## I. FACTUAL BACKGROUND

On July 5, 2004 at approximately 2:30 P.M., Sergeant Gold notified Saucedo that he had to produce a urine sample; the test was being conducted on a random basis. (Ex. D2).[1] Saucedo was told that he had two hours to provide the sample, and was given a cup with eight ounces of water to drink. (Ex. A.) After two hours, Gold returned to retrieve the sample, but Saucedo

---

[1] There is an ambiguity in Exhibit D2 as to the date of the test. Under the section entitled "Collection Information" the date is listed as July 4, 2004. Under the "Donor Information" section the date is listed as "7/5/04." The ambiguity appears to be inconsequential.

complained that he couldn't urinate. (*Id.*) On July 7, 2004, Saucedo was notified of the charges against him (refusal to submit to a test to determine the presence of a controlled substance or alcohol as ordered by staff) via the screening report. (Ex. B.) At the screening, Saucedo requested that a lay advocate assist him with his defense. (*Id.*) He also requested one witness, Officer Brown. (*Id.*) Saucedo did not request any physical evidence. (*Id.*)

The CAB hearing was held on July 29, 2004. (Ex. E.) The CAB found Saucedo guilty of the charge. (*Id*.) Saucedo's finding of guilt was based on staff reports, Saucedo's statement, and physical evidence, namely faxed documents from Saucedo's family doctor regarding Saucedo's medical condition. (*Id.*) The CAB denied Saucedo's request for Brown as a witness because he was not present during the incident. (*Id.*) The prison's medical nurse reviewed the medical records from the family doctor. The nurse found no medical basis to support the claim that the reason Saucedo did not produce the sample was because he was physically unable to produce it. (*Id.*) The sanction imposed was a 100 day earned credit time loss, a loss of recreational privileges for two months, and a credit class demotion. (*Id.*) The facility head and final reviewing authority upheld the finding of guilt and the sanctions. (Exs. F & H.)

## II. STANDARD OF REVIEW

The loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution. *Wolff v. McDonnell*, 418 U.S. 539 (1974). As such, certain process is due to a prisoner before good time credit can be revoked. That process includes: "(1) advance written notice of the charges against [him] at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in [his] defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact-

finder of the evidence relied on and the reasons for the disciplinary action." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994), citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564, 566 (1974). For the hearing to be meaningful, the prisoner "should be afforded the opportunity to be heard before an impartial decision maker." *Id.*

The decision must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard has been repeatedly applied in this circuit. *See Webb v. Anderson*, 224 F.3d 649, 650-51 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717, 719-20 (7th Cir. 1996). "This is a lenient standard, requiring no more than 'a modicum of evidence.'" *Webb*, 224 F.3d at 652 (citations omitted). Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits "so long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* (citing *Hill*, 472 U.S. at 457). "'[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board.'" *Id.* (emphasis and alteration in original) (citing *Hill*, 472 U.S. at 455–56).

### III. DISCUSSION

Saucedo, in his Petition and Traverse, claims that the State violated his constitutional rights in five ways: (1) that he was denied certain evidence relating to his medical condition; (2) that the Adult Disciplinary Procedures (ADP) were violated because all of the evidence (specifically, the medical records) was not considered at the hearing, as required by the Policy; (3) that he was not provided a dry cell, extra water, or additional time to enable him to produce a

urine sample; (4) that he did not refuse to submit a sample but, instead, he simply was not physically able to provide one; and (5) that he was denied the right to call Officer Brown as a witness during the CAB hearing.

### A. Denial of Evidence

Saucedo alleges that his family doctor faxed information regarding his medical condition to the prison, but that the CAB neither saw these records nor reviewed them. (Pet. at 3.) Specifically, he claims that a nurse on the prison medical staff interpreted the medical records and then conveyed her interpretation to CAB chairman Holbrook, via a telephone call. (Traverse at 2, 9.) Saucedo was not present during this phone call, which occurred between the CAB's deliberations and its determination of guilty. (*Id.* at 10.) The chairman orally relayed the content of the phone conversation to the rest of the board. (*Id.* at 9.) Saucedo also alleges that Holbrook told Saucedo that the CAB did not have to provide him with a written statement by the nurse. (*Id.* at 10.) Thus, Saucedo "could not 'cross-examine' a telephone call, or the allegations made during that call when CAB failed to submit a written transcript or a taped recording of [the nurse] and [the chairman]'s alleged conversation." (*Id.*) He further claims that he was not allowed to view or present the medical evidence to the entire CAB at the hearing. (*Id.* at 9.) Finally, he argues that because the CAB relied upon a nurse's review of the medical records, rather than a doctor's, his right to present all relevant evidence was denied. (*Id.* at 7-8.)

First, the Report of Disciplinary Hearing (Ex. E) explicitly indicates that the CAB did in fact know about and consider the faxed medical information, which was reviewed by a nurse. Thus, even if the CAB did not actually review the medical documents, the CAB did consider Saucedo's medical records when reaching its decision. In fact, the CAB made the right call in

4

having a medical professional interpret the records rather than have the board members with no medical expertise simply read them. The CAB therefore properly considered the evidence, but based upon the nurse's interpretation of such evidence, did not find Saucedo's medical condition a justification for the failure to produce a sample.

Next, Saucedo complains that he was neither allowed to cross-examine the nurse because she was not present at the hearing, nor provided with a written statement by her. Saucedo however has no right to confront or cross-examine adverse witnesses. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). This argument therefore must fail. We also cannot say that Saucedo was somehow prejudiced because the CAB did not provide a written statement from the nurse. *See Piggie*, 342 F.3d at 666. In particular, we fail to see how the nurse's written statement reflecting the same opinion that she told Holbrook would have aided Saucedo's defense. Thus, if the CAB committed any error by not providing Saucedo with the nurse's statement, it is harmless. *See id.* Also, there is no constitutional rule that the CAB is only limited to the evidence presented at the hearing. *Rasheed-Bey*, 969 F.2d at 361. Thus, Saucedo's inability to cross-examine the nurse or to view her statement did not violate Saucedo's constitutional rights.

Saucedo also argues that Holbrook's actions regarding the medical evidence (talking to the nurse alone and then conveying her interpretation to the CAB) were constitutionally improper. But Saucedo has not shown that Holbrook was in any way biased against Saucedo and therefore not impartial when relaying the nurse's medical opinion. Saucedo does not contend that Holbrook has some ulterior reason to find Saucedo guilty – for example, that he was involved in the incident underlying the disciplinary hearing. *See Gaither v. Anderson*, 236 F.3d

817, 820 (7th Cir. 2000), *overruled on other grounds by White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). Thus, Holbrook's call to the nurse did not violate Saucedo's due process.

Saucedo's argument that he was not permitted to view and present the medical evidence to the CAB is without merit. It is true that in *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), the court stated that the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), "requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings." There are two functions of *Brady* in the prison disciplinary context. The first is to ensure that the disciplinary board considers all relevant evidence. *Id.* The second is to enable the prisoner to present his best defense. *Id.*

Both functions of *Brady* were satisfied here. First, as stated above, the CAB considered the medical evidence through a qualified nurse's review of the medical records. It was simply not in the way that Saucedo wished. Second, Saucedo's hypothetical presentation of his medical evidence would not have enhanced his defense. He is not a doctor or nurse, and there is no reason for the CAB to place any value on Saucedo's presentation of the medical evidence, which requires a medically trained opinion. Thus, his ability to view and present the medical evidence would not have enabled Saucedo to present a better defense. Accordingly, the CAB did not violate Saucedo's due process rights by failing to provide the medical records to him.

Saucedo's argument that a doctor should have interpreted the medical records rather than the nurse is baseless. It is enough to say that a nurse is more than qualified to review and interpret medical records for the CAB hearing.

### B. Adult Disciplinary Procedures Violation

Saucedo argues again in his second claim that the CAB did not address all the evidence

6

requested at the time of the hearing. (Pet. at 3.) Specifically, he maintains that the CAB did not follow its internal Adult Disciplinary Procedures (ADP) regarding when evidence shall be presented. (*Id.*) First, as previously stated, the CAB did consider all the relevant evidence. Second, to the extent that Saucedo is challenging the CAB's failure to follow state-imposed guidelines, his claim necessarily fails. Saucedo's claim that the CAB failed to follow ADP policy is not a claim based on supposed violations of the U.S. Constitution or federal laws. Relief in this action is only available from violations of the federal Constitution or laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State law questions addressing purported violations of the Indiana Department of Correction policy do not state a claim for federal habeas relief and must be denied. *See Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997). Therefore, Saucedo's claim that his hearing violated the ADP fails to state a claim. Accordingly, this claim is denied.

### C. Adequacy of the Testing Procedures

Saucedo raises several claims regarding the prison's testing procedures. First, he alleges that the manner in which the correctional officer conducted the urinalysis test was unreasonable. Specifically, he claims that when the officer arrived to advise him of the test, he had just used the washroom. (Pet. at 3.) When asked to take the test, Saucedo says he informed the officer that he could not produce a sample because of his medical condition. The officer however did not verify the information. (*Id.*) According to Saucedo, the officer also did not offer any additional water, placement in a dry cell, or extra time to assist Saucedo in providing a sample. (*Id.*) In fact, Saucedo argues that Gold did not even provide him with the two hours he was supposed to have to produce the sample. (Traverse at 1-2.) Next, Saucedo claims that Gold (or someone else)

improperly tampered with the specimen seal on the Chain of Custody form (Ex. D2) and therefore did not properly follow due process procedures when collecting urine samples. (Traverse at 12.) Lastly, Saucedo claims that the IDOC's "policy and procedures for collecting urine specimen did not follow procedural safeguards." (*Id.* at 12.)

The Court finds that the testing procedures in this case were reasonable. The procedures utilized by the State of Indiana allow a person being tested to have an eight-ounce glass of water and two hours to produce a sample. This is completely reasonable and is consistent with the practices at federal institutions. *See* 28 C.F.R. § 550.31(a). Here, Saucedo was asked to take the test, was given the water, but did not produce a sample. It was reasonable for the CAB to reject Saucedo's argument that he needed special accommodation to allow him to complete the urine sample – particularly in light of the nurse's testimony. Saucedo disputes that he was given the required two hours to produce a sample. However, according to the Report of Conduct (Ex. A), the time of the incident started at 2:30 and ended at 4:35. The officer also noted in the Report that Saucedo was given two hours to produce a sample. Thus, the Court finds that it was reasonable for the CAB to reject Saucedo's argument that he was not provided the two full hours. Furthermore, the testing officer exercised his discretion when deciding not to call the medical staff to verify Saucedo's medical condition. Considering that the prison nurse on the medical staff determined that Saucedo did not have a urinary problem that prevented him from providing a sample, that discretion was reasonable.

Saucedo's argument that the specimen seal was tampered is waived; he didn't raise these issues to the facility superintendent or the final reviewing authority. This claim is therefore barred from federal review. *See Markham v. Clark*, 978 F.2d 993, 995 (7th Cir. 1992) (holding

8

that an Indiana state prisoner who failed to exhaust his state administrative remedies for prison disciplinary sanctions "forfeit[s] his state remedies" and is thus also "barred from obtaining relief from the federal court."). It is nonsensical in any event. Saucedo never provided any urine sample. Thus, the actual collection of urine that Saucedo claims was tampered with never happened. Thus, this alleged error on the Chain of Custody form does not prejudice Saucedo in any way. *See Piggie*, 342 F.3d at 666.

Finally, Saucedo contends that the actual IDOC policy and procedures for collecting urine specimens violate the Constitution. Again, because this broad indictment of IDOC's policy and procedures were not raised in the prison appeals process, those claims are barred from federal review in a habeas petition. *See Markham*, 978 F.2d at 995. And as this Court has already found, the policy and procedures used with Saucedo in this specific case were reasonable and did not violate the Constitution.

When a prisoner is subjected to the loss of good time credit, due process requires: (1) advance written notice of the charges against him at least 24 hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564, 566; *Henderson*, 13 F.3d at 1077. In this case, Saucedo was afforded all of these protections. Whether or not Saucedo should have been allowed special consideration was a factual determination for the CAB to make, not a constitutional challenge to the test itself. The simple fact that the CAB did not believe his claim (that he had a medical condition that made it difficult for him to produce the sample) does not mean that his constitutional rights were violated.

9

### D. Insufficient Evidence

Saucedo alleges that he made every effort to provide a sample, and that he communicated his trouble in providing a sample. He therefore argues that he never refused to provide a sample. (Pet. at 3.) The CAB, after considering staff reports, Saucedo's statement and the medical documents, found that there was no valid medical reason to support Saucedo's failure to produce a sample. (Ex. E.)

As noted, the amount of evidence needed in these types of cases is very modest. In this case, the presented evidence meets the "some evidence" standard. The Report of Conduct shows that Saucedo failed to timely produce a urine sample. (Ex. A.) The Report of Disciplinary Hearing also contains the reason for the decision: "Per medical documents, offender has no valid medical reason to support failure to produce. Med documents reviewed by [Nurse] Brewer-Manns [who] stated no reason for failure to produce." (Ex. E.) Therefore, there was sufficient evidence to meet the "some evidence" standard and to find Saucedo guilty.

### E. Denial of Witness

In his traverse, Saucedo argues that he was denied the right to call Officer Brown as a witness at his hearing even though he requested the witness on the Notice of Disciplinary Hearing form. (Traverse at 6-7.) Prisoners have the right to call witnesses to testify on their behalf at CAB hearings when consistent with institutional safety and correctional goals. *See Sweeney v. Parke*, 113 F.3d 716, 719 (7th Cir. 1997), *overruled on other grounds by White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). However, that right is a limited right. *Id.* at 720.

In this case, Saucedo's due process rights were not violated by the CAB's denial of the

witness. The CAB noted that the witness was unnecessary because he wasn't present during the incident. (Ex. E.) Therefore, the testimony would have been irrelevant and unnecessary and was not arbitrarily excluded. *See Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002); *see also Piggie*, 342 F.3d at 666 (holding that "[a]lthough prison disciplinary committees may deny witness requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary, they may not exclude witnesses requested by an offender with no explanation at all"). Accordingly, this claim is denied.

## IV. CONCLUSION

For all the reasons stated, and because it is clear that none of Saucedo's constitutional rights have been violated, this petition for relief under 28 U.S.C. §2254 is **DENIED.** Respondent's Appearance and Notice of Substitution of Counsel [Doc. 16] is **DENIED AS MOOT**.

**SO ORDERED**

ENTERED: July 14, 2006

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT